UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| L.S., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, et al., <br><br> Defendants. | Case No. 24-cv-00592-VKD <br><br> **ORDER RE SOCIAL SECURITY APPEAL** <br><br> Re: Dkt. Nos. 11, 13 |

Plaintiff L.S.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*. L.S. contends that the administrative law judge ("ALJ") failed to provide legally sufficient reasons for rejecting her subjective testimony regarding her limitations, and did not properly evaluate the opinion of consulting physician, M. Jakubowski, Psy.D. L.S. seeks "remand for the correction of the legal errors" as well as payment of benefits based on the ALJ's evaluation of Dr. Jakubowski's opinion. Dkt. No. 11. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 13.

Upon consideration of the papers and the relevant evidence of record, for the reasons set

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek, Acting Commissioner of Social Security, is substituted for his predecessor.

1  forth below, the Court reverses the Commissioner's decision and remands this matter for further
2  administrative proceedings consistent with this order.[3]

## I. BACKGROUND

L.S. was 26 years old on the alleged disability onset date of March 19, 2020. AR[4] 223. She has a high school education and completed one year of college. AR 269. Her significant previous employment includes working as a laundromat attendant and as a gluer in a factory that makes military-grade inflatable boats. *See* AR 255.

L.S. filed applications for supplemental security income and disability insurance benefits in April and May of 2021. *See* AR 223, 230. L.S. asserted that she had the following disabling conditions: vasovagal syncope, vasovagal response, anxiety, dermatitis, nerve damage in the right foot, and depression. *See* AR 267. Her applications were denied initially and on reconsideration. AR 93-94, 112-13, 136, 148. An ALJ held a hearing on December 6, 2022.

On March 17, 2023, the ALJ issued an unfavorable decision. AR 18. The ALJ found that L.S. meets the insured status requirements of the Act through September 30, 2025, L.S.'s date last insured. AR 20. The ALJ further found that L.S. has not engaged in substantial gainful activity since the March 19, 2020 alleged disability onset date. *Id*.

The ALJ found that L.S. has the following severe impairments: anxiety disorder and vasovagal syncope (fainting). AR 21.[5] The ALJ further found that L.S. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. *Id.* The ALJ determined that L.S. has the residual function capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non exertional limitations: "she can perform work that does not involve interaction with the general public and no more than occasional interactions with coworkers and

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 9.

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 10.

[5] The ALJ additionally determined that the nerve damage to the right foot was non-severe and that there was no medical evidence to support L.S.'s claims of depression and dermatitis. *Id.*

supervisors." AR 23.

The ALJ found that L.S. is able to perform her past work as a gluer as actually and generally performed, as well as other jobs that exist in significant numbers in the national economy, such as assembler, cleaner-housekeeper, and packager. AR 28-29. Accordingly, the ALJ concluded that L.S. has not been disabled, as defined by the Act, from March 19, 2020 through the March 17, 2023 date of the ALJ's decision. AR 30.

The Appeals Council denied L.S.'s request for review of the ALJ's decision. AR 1. L.S. then filed the present action seeking judicial review of the decision denying her applications for benefits.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted). However, the Court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**III.    DISCUSSION**

L.S. challenges three determinations made by the ALJ. First, she argues that the ALJ erred in evaluating the medical opinion of consulting psychologist Dr. Jakubowski, whose opinion the ALJ found only partially persuasive. Second, she argues that the ALJ erred in failing to incorporate in the RFC the aspects of Dr. Jakubowski's opinions the ALJ found persuasive. Third, she argues that the ALJ erred in discounting her subjective symptom testimony. Dkt. No. 11 at 4.

**A.    Dr. Jakubowski's Medical Opinions**

Dr. Jakubowski conducted a virtual psychological evaluation of L.S. on November 4, 2021. AR 442. She found that L.S.'s "thought processes are clear and rational," that there was "no evidence of hallucination(s), delusion(s), or other unusual thought content," that L.S.'s mood was stable, and her speech was normal. AR 444-45. Dr. Jakubowski further found that L.S. had appropriate concentration, memory, insight, and judgment. AR 445. She observed that L.S. "was able to follow simple instructions and appeared to struggle with complex tasks." AR 446. She noted that L.S. described having difficulty with anxiety since the age of 13, but had become better at handling her symptoms over time. *Id.* Dr. Jakubowski further noted that L.S. "reports . . . using homeopathic remedies to address" the anxiety symptoms, as well as clinical therapy, mindfulness, and cannabis to aid with "her anxiety and 'stress level.'" *Id.*

Dr. Jakubowski provided the following prognosis for L.S.:

> [L.S.'s] prognosis is somewhat depended on her treatment compliance. It is clear that she has been treated for anxiety symptoms. Due to her reports of anxiety, she will likely have difficulty tolerating stressful work environments, have problems with social engagement. In a work setting, she will have difficulties functioning independently and will need a supervisor to provide repetition of instructions when learning new tasks and provide prompts throughout the day for her to stay on task.
>
> From a psychiatric standpoint, the claimant's condition would be expected to improve within the next 6-12 months with active treatment and clinically proven treatment. The claimant may benefit from starting one to one therapy and medication to address and manage current mental health symptoms. The claimant's prognosis is fair with treatment and intervention.

*Id.* Dr. Jakubowski opined that L.S. is "not significantly limited" with respect to her ability to: (1)

4

understand, remember, and perform simple written and oral instructions; (2) understand, remember, and perform complex written and oral instructions; (3) maintain regular attendance in the workplace; and (4) perform work activities on a consistent basis. *Id.* With respect to L.S.'s ability to "perform work activities without special or additional supervision," Dr. Jakubowski found that L.S. is "mildly limited due to anxiety that impacts attention, concentration, and memory skills," and that "[a] supervisor will need to repeat instructions and provide prompts periodically for her to carry out tasks in an average workday." AR 447. Dr. Jakubowski found that L.S. is "mildly to moderately limited" in her ability to "interact with coworkers and with the public" and "accept instructions from supervisors," due to "anxiety that impacts social engagement and stress tolerance" and "affective instability related to anxiety that impairs social engagement and contributes to social isolation." *Id.* With respect to L.S.'s ability to "complete a normal workday or workweek without interruptions," Dr. Jakubowski found that L.S. is "mildly to markedly limited as [her] symptoms are chronic and occur daily." *Id.* Finally, Dr. Jakubowski found that L.S. is "moderately limited" in her ability to "deal with the usual stresses encountered in competitive work environment," due to her "lack of coping skills to stressful environments associated with anxiety." *Id.*

The ALJ found Dr. Jakubowski's opinions "partially persuasive," and adopted the doctor's opinions "regarding [L.S.'s] ability to interact with coworkers, supervisors, and the public." AR 26-27. However, the ALJ found Dr. Jakubowski's remaining opinions unpersuasive. *Id.*

Under the regulations that apply to L.S.'s applications, ALJs are required to evaluate the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c;[6] *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The first two factors,

---

[6] Because the regulations regarding disability insurance benefits applications and supplemental security income applications are nearly identical, for simplicity this order cites only to the regulations pertaining to disability insurance benefits applications.

supportability and consistency, are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id.* § 404.1520c(b)(2).

### 1. Opinions the ALJ Found Persuasive

The ALJ adopted as persuasive Dr. Jakubowski's opinions regarding L.S.'s "ability to interact with coworkers, supervisors, and the public." AR 27. As noted above, Dr. Jakubowski found that L.S. is "mildly to moderately limited" in her ability to "interact with coworkers and with the public" and "accept instructions from supervisors," due to "anxiety that impacts social engagement and stress tolerance" and "affective instability related to anxiety that impairs social engagement and contributes to social isolation." AR 447. The ALJ found that these limitations were supported by the objective medical evidence and other medical and non-medical sources. AR 27.

L.S. argues that the RFC—which limited L.S. to "work that does not involve interaction with the general public and no more than occasional interactions with coworker and supervisors" (*see* AR 23)—does not reflect "the need of [L.S.] to have repeated instructions and provide prompts periodically for her to carry out tasks in an average workday." Dkt. No. 11 at 7. The

premise of this argument appears to be L.S.'s belief that the ALJ adopted Dr. Jakubowski's opinion that L.S. is "mildly limited due to anxiety that impacts attention, concentration, and memory skills," and that "[a] supervisor will need to repeat instructions and provide prompts periodically for her to carry out tasks in an average workday" (*see* AR 447). *Id.* The Court agrees with the Commissioner that this premise is not supported by the record. *See* Dkt. No. 13 at 10. Rather, the ALJ's decision reflects that the ALJ adopted Dr. Jakubowski's opinions about L.S.'s abilities to *interact* with others, but did not adopt the doctor's opinion about her "mild" limitations in the areas of "attention, concentration, and memory" that would require a supervisor to repeat instructions and provide prompts.

With respect to the opinions the ALJ found persuasive, the Court agrees with the Commissioner that the RFC reasonably implements L.S.'s limitations in interacting with coworkers, supervisors, and the public. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) ("The ALJ took into account Turner's 'marked limitations in social functioning' by 'limiting [him] to work in which there is no public contact, and where it is recognized that he works best alone.'"). The Court finds no error in this aspect of the ALJ's decision.

### 2. Remaining Opinions the ALJ Found Unpersuasive

The ALJ found unpersuasive Dr. Jakubowski's other opinions, explainig that "the claimant's standard treatment and average activities of daily living do not support additional limitations." AR 27. L.S. argues that the ALJ did not provide legally sufficient reasons for rejecting the other limitations Dr. Jakubowski found. Dkt. No. 11 at 14 (citing 20 C.F.R. §404.1520(c)(b)(2)). The Commissioner argues that the ALJ's decision must be considered in its entirety, and that the ALJ explained why the "non-social interaction" limitations the ALJ rejected are inconsistent with L.S.'s treatment history and her activity level, and thus properly addressed these factors. Dkt. No. 13 at 10, 11-13.

The Court agrees with the Commissioner that the ALJ summarized and discussed L.S.'s treatment history and her activities in the pages preceding her assessment of Dr. Jakubowski's medical opinions. *See* AR 22, 24-26. While the ALJ appears to have found no deficiency in the supportability of the doctor's opinion—i.e. the extent to which she explained the basis for her

opinion (*see* AR 27 (referring to "detailed clinical finding and narratives"))—the ALJ did identify areas where, in the ALJ's view, Dr. Jakubowski's opinions were inconsistent with other evidence in the record, specifically the alleged conservative treatment received by L.S. and her account of her daily activities. AR 27.

The ALJ's discussion of these purported inconsistencies appears in the portion of her decision that also discusses evidence the ALJ found to be inconsistent with L.S.'s subjective testimony. *See* AR 24-26. However, as explained below, the ALJ's assessment of L.S.'s medical records, treatment history, and activity level is not supported by substantial evidence. Because the ALJ relied on this erroneous assessment to reject both Dr. Jakubowski's opinions regarding L.S.'s additional limitations and L.S.'s own subject testimony, the Court concludes that remand is required.

### B. L.S.'s Subjective Testimony

L.S. argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting her subjective testimony. Dkt. No. 11 at 20-21. The Commissioner responds that the ALJ reasonably discounted some aspects of L.S.'s subjective testimony based on her treatment history, activity level, and objective medical evidence. Dkt. No. 13 at 2-3.

At the administrative hearing on December 6, 2022, L.S. testified that she began experiencing severe anxiety at work during the beginning of the COVID-19 pandemic, and subsequently left her job as a gluer in March of 2020. AR 43; *see also* AR 267. L.S. testified that she experiences panic attacks which can be triggered in the following circumstances: (1) when she tries to leave her home or do things outside the home; (2) "because of groceries being brought home [by her boyfriend] and having to deal with them"; (3) when she is at home and hears people outside; and (4) if she has to "talk[] or be[] around people," particularly strangers. AR 46-47. L.S. described her panic attacks as lasting from "15 minutes to much longer." AR 47. She testified that most of the anxiety medication she has tried made her "feel a lot worse." AR 48. She stated that Ativan was the only effective medication but that it made her "very sleepy" and she could not "handle much of anything for a while" after taking it. *Id.* For these reasons, she mostly

8

"take[s] a few . . . natural remedies or avoid[s] any of [her] triggers in general." *Id.* She explained that she has Lorazepam, but uses it for emergencies only, and had not used it as of three years before the hearing. AR 53-54.

L.S. also testified about her episodes of vasovagal syncope or fainting. She said she is generally able to "recognize [her] triggers" to avoid fully passing out—if she starts feeling nauseous or dizzy or is having trouble breathing, she tries to relax as much as possible, through breathing, elevating her legs, using therapeutic sounds, and sometimes going to sleep as a reset. AR 48-49. Even just going to the restroom or doing simple things around the house can trigger these symptoms. AR 49, 55. She stated that she has not driven since an accident that occurred about a year before the hearing but speculated that she could potentially drive in an emergency. AR 50-52. L.S. asserted that she experienced these same symptoms to a certain extent at her job prior to COVID-19 but was much more able to manage them at the time. AR 55. She did have to leave work a few times due to these symptoms when she was grieving the loss of her mother in 2016. *Id.* L.S. testified that she is mostly able to take care of herself and can do "household chores like light meals, laundry, [and] cleaning around the house" with breaks in between. AR 56-57. She reported that she and her boyfriend go to the beach sometimes but away from people so that she "can actually relax," that they sometimes go fishing, and that she has tried journaling and puzzling. AR 57.

In a disability report dated July 9, 2021, L.S. stated that she stopped working because she was afraid she was going to pass out at work. AR 267. She described the "worst of the syncope warning signs" as: "lightheadedness, nausea, tingl[]y feeling, tunnel vision when really close to passing out and persistent nausea before, during, and after a syncope episode that can last for long periods of time if i don't have [Lorazepam] or [Zofran] to help my body calm down/ stop pu[]king." *Id.* In a function report dated August 1, 2021, L.S. described her primary challenge as "issues with being around people s[i]n[c]e the pandemic." AR 299. She noted that before the pandemic she already had "a big issue with handling stress." *Id.* She stated that the vasovagal syncope causes her to "get very nauseous then lightheaded and if I push myself to[o] hard I will pass out and get sick after I wake up." *Id.* She generally must rest afterwards and it takes a few

9

1   days to feel normal. AR 300. L.S. reported that she is able to do laundry, gardening, dishes,

2   mowing and crafts. AR 301. She does not go out shopping because of her fear of being around

3   people but does go to the beach and fishing with her boyfriend. AR 302-03.

4         An ALJ is not "required to believe every allegation" of impairment. *Treichler v. Comm'r*

5   *of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). In assessing a claimant's subjective

6   testimony, an ALJ conducts a two-step analysis. First, "the claimant must produce objective

7   medical evidence of an underlying impairment or impairments that could reasonably be expected

8   to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)

9   (cleaned up). If the claimant does so, and there is no affirmative evidence of malingering, then the

10  ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering

11  specific, clear and convincing reasons for doing so." *Id*. A reviewing court is "constrained to

12  review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)

13  (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). "If the ALJ's finding is

14  supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*,

15  533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).

16        An ALJ may consider several factors, including (1) ordinary techniques of credibility

17  evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a

18  prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at

19  1039. Additionally, an ALJ may also consider the observations of treating and examining

20  physicians and other third parties concerning the nature, onset, duration, and frequency of the

21  claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by

22  the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "Although lack of medical

23  evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can

24  consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see*

25  *also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in

26  the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as

27  undercutting such testimony."). However, "an ALJ cannot insist on clear medical evidence to

28  support each part of a claimant's subjective pain testimony when there is no objective testimony

evincing otherwise." *Smartt*, 53 F.4th at 498.

Here, the ALJ found that L.S.'s medically determinable severe impairments of anxiety and vasovagal syncope could reasonably cause the symptoms L.S. reported. AR 24. However, the ALJ also found that L.S.'s statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* Because the ALJ did not identify any affirmative evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for this determination. *Tommasetti*, 533 F.3d at 1039.

The ALJ found L.S.'s testimony inconsistent with the objective medical evidence. AR 26. According to the ALJ, L.S.'s "physical and mental examinations did not show findings to the extent that would warrant the finding of greater limitations in the residual functional capacity . . . . her physical and mental status examinations were generally normal or only showed mild to moderate findings." *Id.* In considering L.S.'s mental impairments, the ALJ primarily relied on: (1) a series of psychotherapy progress notes from one of L.S's providers between October 2021 and September 2022; (2) notes from several providers, including the above-mentioned provider, for a series of clinical visits between June 2019 and May 2021; and (3) Dr. Jakubowski's November 2021 clinical findings. AR 25-26. The ALJ observed that these records reflect normal mental status findings, indicating that L.S. was generally "alert and oriented to person, place and time and had normal speech and behavior," and that characteristics such as "appearance, orientation, motor activity, interview behavior, insight, attention and concentration, perception, judgment and thought content processes were usually appropriate." AR 25.

The Court agrees that the medical records cited by the ALJ indicate that L.S. did not generally have significant mental limitations.[7] However, L.S.'s testimony is not that she always experiences anxiety or fainting, but that she has a persistent high level of anxiety and experiences *episodic* severe anxiety attacks and vasovagal syncope incidents triggered by stress which are

---

[7] The present appeal focuses on L.S.'s mental impairments and the sometimes physiological effects of those impairments. L.S. does not appear to dispute the ALJ's findings regarding her physical or exertional limitations generally.

debilitating. *See* AR 304 ("[D]uring a[n] [] episode I can't do anything then after it's very difficult and I get dizzy/nauseous easily"); *id.* ("It's best for me to sleep asap after feeling off/episode); *id.* (noting she follows written instructions "after a[n] episode badly/usually ok fairly well unless stressed"). Indeed, the ALJ acknowledged that L.S.'s subjective testimony describes *episodic* difficulties. *See* AR 24 ("[C]laimant alleged that her panic attacks primarily limited her ability to work. Specifically the claimant asserted that she has panic attacks one to two times a week . . . ."); AR 25 (discussing L.S.'s allegations regarding "her vasovagal episodes").

None of the medical records suggests that L.S. experienced any debilitating episodes *while being examined*, and as a result it is not clear how the "normal" mental status findings the examinations contain could reasonably be considered inconsistent with L.S.'s hearing testimony. *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) ("It makes sense that not every panic attack would be observed by Hill's physicians, therapists, or counselors (or even family, friends, and co-workers), because these attacks would not always occur in their presence."). And while such examinations can provide information about the frequency and condition of the claimant between these attacks, the ALJ does not explain how these examinations, the majority of which were conducted remotely and after L.S. stopped working, contradict her testimony that these debilitating episodes of anxiety occur more frequently when she attempts to go out and are more limited when she stays at home and avoids her triggers. AR 46-47, 379, 381, 392, 394. Thus, to the extent the ALJ discounted L.S.'s testimony regarding the debilitating effects of these episodes based on evidence of her mental status examinations, the ALJ's assessment is not supported by substantial evidence or clear and convincing reasons. *See Wranich v. Kijakazi*, No. 3:22-cv-0119-HRH, 2022 WL 16960900, at *5 (D. Alaska Nov. 16, 2022) ("[M]ental status exams are a mere snapshot of a claimant's functioning on a particular day, and do not constitute substantial evidence.") (cleaned up).

In addition to L.S.'s medical records, the ALJ also weighed L.S.'s testimony against her treatment history.[8] The ALJ found "that the degree of claimant's subjective complaints [was] not

---

[8] The Commissioner contends that L.S. waived any opposition to the ALJ's consideration of her treatment history and daily activities by not specifically addressing those arguments in her opening

12

comparable to the extent of treatment sought by the claimant." AR 26. Specifically, the ALJ determined that L.S.'s "treatment regimen was not particularly aggressive" and that there was "minimal objective evidence of the claimant being hospitalized for psychiatric treatment or receiving residential care." *Id.* The ALJ found that L.S.'s impairment "was amenable to conservative and and/or standard treatment, medication" and observed that the records supported that "medications have been relatively effective in controlling the claimant's symptoms." AR 25. L.S. argues that there is no indication in the record that "there was anything more the doctors wanted [L.S.] to do" and that "the ALJ cannot fault L.S. for failing to pursue non-conservative treatment options if none exist." Dkt. No. 14 at 3.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Similarly, "[a]n unexplained or inadequately explained failure to seek treatment may be considered when evaluating a claimant's allegations of subjective symptoms." *Tommasetti*, 533 F.3d at 1039. However, "where the claimant has a good reason for not seeking more aggressive treatment," a conservative course of treatment "is not a proper basis for rejecting the claimant's credibility." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding use of ibuprofen not a proper basis for rejection of claimant's testimony where other pain medication caused "adverse side effects").

The Court agrees with the Commissioner that the record reflects conservative treatment and also reflects that L.S. declined recommended courses of further treatment. Indeed, the record reflects that much of L.S.'s treatment was through "homeopathic" or "naturopathic" remedies as well as regular psychotherapy. *See, e.g.*, AR 377 ("Currently using aroma therapy, sound therapy techniques and teas when developing panic attacks . . . . Feels like the naturopath methods are helping."); AR 412 (L.S. is "using stress tinctures and homeopathic remedies"); AR 508-575 (record of psychotherapy). However, the ALJ's principal reason for discounting L.S.'s testimony

---

brief. Dkt. No. 13 at 4-5. However, L.S.'s brief challenges the ALJ's analysis that the objective medical evidence and "other evidence" in the record were inconsistent with L.S.'s testimony. Dkt. No. 11 at 21-22. The Court is not persuaded that L.S. waived her arguments about this other evidence.

on this basis concerns L.S.'s treatment with anti-anxiety medication, which the ALJ described as "conservative" and "relatively effective." AR 25.

As an initial matter, the Court questions whether anti-anxiety medications/antidepressants are properly considered "conservative" treatment. *See, e.g.*, *Wyatt A. v. O'Malley*, No. 24-cv-00712-SK, 2024 WL 5162651, at *3 (N.D. Cal. Dec. 17, 2024) ("Courts within the Ninth Circuit have repeatedly held that taking psychiatric medications, including antipsychotics and antidepressants such as the medications taken by Plaintiff, is not considered conservative treatment."); *McCormick v. O'Malley*, No. 1:23-cv-01522-SKO, 2024 WL 3203184, at *9 (E.D. Cal. June 27, 2024) ("Plaintiff's treatment of psychiatric medications including antipsychotics and antidepressants is neither "conservative" nor "noninvasive"."); *Baker v. Astrue*, No. ED CV 09-01078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Much treatment of mental disorders involves medication management, and it is unpersuasive to call this 'conservative treatment,' and state that therefore a claimant does not have a severe impairment. Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment.").

Regardless, however, the ALJ's statement that "claimant's impairment was amenable" to medication and that "the medications have been relatively effective in controlling claimant's symptoms" is simply unsupported by the record. As the Commissioner acknowledges, L.S. "was prescribed anti-anxiety medications, which she 'rarely used' due to reported side effects . . . ." Dkt. No. 13 at 3. The parts of the record on which the ALJ relies consistently note that L.S. struggled with the medication and discontinued multiple different types because of the side effects. AR 25. For example, the ALJ cites to a clinic visit on October 30, 2020 where the provider reported "Patient states she only took 4 days of [L]exapro. She states that she had nausea, dizziness, and felt very spacey while on the medication." AR 389. At the same visit, the provider observed that "she has tried different medications to help with the anxiety and did not like the adverse effects." AR 390. The provider further noted that "she takes [A]tivan for panic attack-which she also takes very rarely" and that "she has learned to manage the triggers." *Id.* Similarly, the ALJ cites to a clinic visit on December 15, 2020 where a provider notes "Patient started on

Zoloft but discontinued due to side effects and does not want to start new medication at this time." AR 386. The provider further comments that "Patient taking Ativan for anxiety as needed; rarely taking" and that her "[l]ast [anxiety] attack occurred at the beginning of this year; [she] notes she is able to better control anxiety attacks by laying down and hav[ing] silence." *Id.* Finally the ALJ cited to a clinic visit on March 24, 2021 in which the provider noted that "[L.S.] [f]eels like naturopath methods are helping. Using CBD tincture and gummies which have been helping." AR 377. The notes of the visit further state that L.S. "[c]ontinues to see therapist but has not been making significant improvements in anxiety reduction. Has decreased syncopal episodes. Declines trial of pharmacological therapies. Recommend pt consider speaking to naturopath given pt does not want to trial evidence based medication therapies." AR 378.

The record reflects that L.S. rarely took medication and indeed resisted taking it because of side effects. *See, e.g.*, AR 412 (4/9/2020) ("Pt states that A. Brubkaer has requested that she pursue counseling and start taking SSRI[]s, and that she is open to counseling, but not to meds. Pt states that she is uncomfortable with side effects of meds, and that she is worried they would trigger vasovagal condition."); AR 397 (5/28/2020) ("She reports that she took 5 doses of sertraline but that she had dizziness and did not feel well while on it. Since she has stopped it she is actually feeling much better.); AR 396 (6/24/2020) ("Pt reports that she tried antidepressants for five days, but stopped because she felt as if they were making symptoms worse."); AR 548 (4/26/2022) ("Pt states that she is still not willing to try antidepressants, as they have made her feel worse in the past and she finds the idea of meds to be scary. She states that she manages anxiety symptoms by avoidance, and [] prefers this to taking pills. Pt expresses insight that this avoidance strategy is time limited. She states that she thinks it would be beneficial to see out of town neurologist that specializes in 'vasovagal syncope' but current anxiety levels prevent her from doing so."); AR 554 (6/21/2022) ("Pt states that she copes by avoidance, and that that is the only thing that has worked for her. She states that she does not know if this strategy will work forever, but that she does not know what else can make a difference. Pt states that she is unable to try psych meds, and discusses bad experience with Zoloft, which made anxiety worse. Pt states that she does not like taking pills and that she does not 'play' with meds. Pt discusses multiple other

15

1  reasons why she believes that taking meds would not be beneficial for her"); AR 569 (8/30/2022)
2  ("Pt states that she does not like the idea of antidepressants, and is unwilling to try them. She
3  states that she 'has not hit rock bottom enough to try pills,' although she is interested in
4  microdosing.")

5      Substantial evidence simply does not support the ALJ's conclusion that L.S.'s impairments
6  were effectively treated with medication. While the record certainly contains evidence suggesting
7  that L.S. did not comply with a recommended course of treatment or elected to treat her conditions
8  using alternative means that were not recommended by her treatment providers,[9] the ALJ did not
9  rely on these reasons in discounting L.S.'s subjective testimony.

10      Finally, the ALJ discounted L.S.'s subjective testimony based on her activity level,
11  observing that "the claimant described daily activities that are not limited to the extent one would
12  expect, given the complaints of disabling symptoms and limitations." AR 26. The ALJ did not
13  point to any specific activities, but elsewhere in the decision the ALJ notes that L.S. is capable of:
14  (1) preparing meals and doing household chores; (2) engaging in hobbies such as photography,
15  puzzling, and journaling; and (3) going to the beach and going fishing with her boyfriend. AR 22.
16  L.S. argues that these activities do not contradict her testimony regarding her limitations or
17  "demonstrate an ability to spend a substantial part of the day doing activities transferable to a full-
18  time work setting." Dkt. No. 14 at 6. The Court agrees.

19      "An ALJ may properly come to an adverse credibility determination as to subjective []
20  testimony based upon activities of daily living where: (1) the activities of daily living contradict
21  the claimant's other testimony; and/or (2) the activities of daily living meet the threshold for
22  transferable work skills." *A.P. v. Kijakazi*, No. 23-cv-01184-EMC, 2024 WL 116307, at *9 (N.D.

---

[9] The ALJ references two instances in the treatment record of L.S. suggesting she is able to manage some of her triggers and symptoms on her own, specifically: a visit to the clinic on October 30, 2020 where L.S. stated that "she has learned to manage the triggers" and a visit on March 3, 2021 where L.S. stated "that she was able to manage it on her own for awhile as far as fainting." AR 25 (citing AR 382 and 390). However, the ALJ provides no explanation as to how these statements are inconsistent with L.S.'s testimony that her symptoms limit her functioning, in part because of how she has to manage them. *See* AR 48 (stating that she attempts to manage her vasovagal syncope by "try[ing] to recognize my triggers by just knowing if I'm starting to get nauseous or if I'm getting dizzy or having trouble breathing or many of the other warning signs, that I just stop doing whatever I'm doing . . . .").

1   Cal. Jan. 10, 2024).  However, "ALJs must be especially cautious in concluding that daily

2   activities are inconsistent with testimony about pain, because impairments that would

3   unquestionably preclude work and all the pressures of a workplace environment will often be

4   consistent with doing more than merely resting in bed all day."  *Garrison v. Colvin*, 759 F.3d 995,

5   1016 (9th Cir. 2014); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This

6   court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

7   activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any

8   way detract from her credibility as to her overall disability."); *Reddick v. Chater*, 157 F.3d 715,

9   722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants

10  should not be penalized for attempting to lead normal lives in the face of their limitations.").

11       The ALJ does not explain why any of the activities described by L.S. are inconsistent with

12  her testimony.  Many of them, such as puzzling, journaling, and preparing meals, do not involve

13  leaving the house which L.S. claims is a primary trigger for her debilitating episodes of anxiety.

14  Nor are any of these activities obviously comparable to the activities L.S. might be expected to

15  perform in the workplace.  As to those activities that involve leaving the house (e.g., going to the

16  beach and going fishing), both are consistent with L.S.'s testimony that her primary limitations

17  involve being around people—limitations the ALJ recognized, at least in part, in her RFC

18  calculation.  In these circumstances, the Court finds the ALJ failed to provide clear and convincing

19  reasons supported by substantial evidence for discounting L.S.'s subjective testimony based on her

20  daily activities.

21                                                       \*\*\*

22       Accordingly, the Court concludes that the ALJ's reasons for discounting L.S.'s subjective

23  testimony and for rejecting some of Dr. Jakubowski's opinions regarding L.S.'s limitations are not

24  supported by substantial evidence.  L.S. argues that these errors resulted in an RFC calculation

25  that does not reflect her limitations.  Dkt. No. 11 at 10, 16, 23-24.  The Commissioner does not

26  contend that such errors would be harmless.  In these circumstances, the Court finds that remand is

27  required.  *See Carmickle*, 533 F.3d at 1166 ("[B]ecause the ALJ erred in excluding some of

28  Carmickle's limitations from the RFC assessment . . . . and thus from the VE hypothetical, the

1  VE's testimony has no evidentiary value.") (quotations and citations omitted).

### C. Remand

As to the ALJ's error in excluding parts of Dr. Jakubowski's opinion, L.S. contends that the Court should remand for payment of benefits as further proceedings would be futile. Dkt. No. 11 at 17. As to the other identified errors, L.S. requests for "remand for the correction of the legal errors." *Id.* at 24. L.S. does not provide any specific argument as to why further proceedings would be futile and payment of benefits appropriate.

"An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Court may remand for an immediate award of benefits under the credit-as-true standard only where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings, when the record as a whole creates serious doubt as to disability. *Garrison*, 759 F.3d at 1021.

Here, the credit-as-true standard is not satisfied. A final determination regarding L.S.'s entitlement to benefits cannot be made absent a proper assessment of L.S.'s impairments, including an assessment of L.S.'s subjective testimony and Dr. Jakubowski's opinion. As discussed above, on remand the ALJ should reconsider (1) L.S.'s testimony regarding her anxiety and vasovagal syncope symptoms and limitations, and (2) Dr. Jakubowski's medical opinions and, based on this reconsideration, (3) reassess L.S.'s RFC and her ability to perform past relevant work or work within the national economy, if applicable.

### IV. CONCLUSION

Based on the foregoing, the Court reverses the Commissioner's decision and remands this case for further proceedings consistent with this order.

The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 31, 2025

Virginia K. DeMarchi
United States Magistrate Judge